IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| VALENTINO GRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 05-1355 |
| | ) | |
| DIVISION OF REHABILITATION SERVICES of the DEPARTMENT OF HUMAN SERVICES OF THE STATE OF ILLINOIS; ROBERT O'BRIEN, in His Individual and Official Capacity, and JANET WILSON, in Her Individual and Official Capacity, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

Before the Court is a Motion to Dismiss by Defendants Illinois Department of Human Services, Robert O'Brien, and Janet Wilson. For the reasons that follow, Defendants' Motion to Dismiss [#7] is GRANTED IN PART AND DENIED IN PART.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims asserted arise pursuant to Title VII, 42 U.S.C. § 2000e, and 42 U.S.C. § 1983.

### BACKGROUND

The following background facts are taken from Plaintiff's Complaint and Plaintiff's Response to Defendants' Motion to Dismiss.

Plaintiff Valentino Graham ("Graham") is a 6'2" black male, weighing 240 pounds. Graham is employed in the Division of Rehabilitative Services of the Department of Human

Services of the State of Illinois and has been since 1999. In 2002, a reduction of force was undertaken in the Peoria office of the Division, and as a result, Graham was laid off. He applied and was reassigned to the position of Rehabilitation Counselor in the Pekin, Illinois, office. Graham received a favorable employment evaluation on March 21, 2003, and allegedly performs his job in accordance with the legitimate expectations of his employer.

Graham suffers from migraine headaches and was directed by his doctor to wear tinted glasses indoors when he had a migraine headache or felt the symptoms of a headache. Graham wore tinted glasses to work, and Defendant Robert O'Brien, Resource Service Supervisor/Public Service Administrator informed Graham on September 3, 2003, that there had been customer complaints about his tinted glasses and directed Graham to stop wearing them. During this conversation, Graham asked O'Brien for a copy of the customer complaint and informed O'Brien that he was wearing the tinted glasses pursuant to doctor's orders. O'Brien refused to give Graham the customer complaint. From O'Brien's manner on September 3, 2003, and the following two weeks of harassment that Graham received from O'Brien in the form of constant criticism of his employment performance, Graham believed his problems with O'Brien were because he was a large black man who needed to wear tinted glasses.

On September 4, 2003, a written directive was issued to Graham directing him to cease wearing the glasses unless a medical excuse was provided. Graham responded by requesting an accommodation on September 9, 2003, and attached his doctor's report confirming that the doctor had instructed Graham to wear tinted glasses for his migraine headaches.

On September 16, 2003, Graham filed an internal equal employment opportunity ("EEO") complaint with the Division of Rehabilitative Services complaining of racial discrimination and harassment and medical and disability harassment. O'Brien responded by

conducting a counseling session with Graham on October 31, 2003. O'Brien titled the meeting "conduct unbecoming a professional" and told Graham to consider it a counseling session. O'Brien allegedly told Graham that the counseling session was because O'Brien needed to be able to account for Graham's time.

O'Brien also regularly objected to Graham's performance. At a team-building exercise with a former Equal Employment Opportunity Officer on November 13, 2003, all of the employees of the Pekin Office were given the opportunity to complain about Graham. When complaints about O'Brien's conduct were made, the EEO Officer ended the meeting and did not receive complaints about anyone other than Graham.[1]

On December 1, 2003, Graham sent Defendant Janet Wilson, the Division Equal Employment Opportunity Officer, an e-mail complaining of O'Brien's harassment and the fact that he solicited complaints from support staff and customers about Graham's performance in order to discipline Graham.

On December 10, 2003, Defendant Wilson sent Graham a resolution agreement stating that the matter was closed and informing Graham that the September 4, 2003, letter from O'Brien, which directed Graham not to wear tinted glasses at work, and another letter that referred to the September 4, 2003, letter were removed from Graham's file. Graham claims that Wilson did nothing to investigate his complaints that O'Brien was harassing him and that she did nothing to remedy the harassment.

Graham informed Wilson that he wanted to appeal her December 10, 2003 letter. Wilson directed him to write to Mr. Derrick Davis. Graham instead wrote to the Secretary of Human Services. Graham received a response from the Chief of Administrative Hearings that stated that

---

[1] Although Plaintiff makes additional allegations in Paragraph #14 of his Complaint, the paragraph is indecipherable as written and therefore the Court has not included these facts in this background section.

3

the case outcome must be described.  Wilson sent Graham an e-mail on February 9, 2004, stating that the September 16, 2003, complaint had been resolved.  Graham claims that this was contrary to Division rules because a complaint can only be resolved at Wilson's level by agreement with the Plaintiff and Graham did not agree.

Graham alleges that he regularly endured severe and repeated acts of harassment after he filed the internal EEO claim with the Division on September 16, 2003.  Plaintiff states that these repeated acts of harassment created a hostile work environment from September 16, 2003, to the present and that the terms and conditions of his employment were altered.

On April 14, 2004, O'Brien submitted a memorandum that Springfield was sending back all evaluations that did not contain adequate justifications.  Included in that group of evaluations was O'Brien's counseling session of Graham on October 31, 2003, where he told Graham that he needed to be able to account for Graham's time.

On May 11, 2004, O'Brien submitted an evaluation of Graham that stated that Graham needed to improve his human relations skills but did not include an explanation of how Graham was supposed to do so.  Graham claims that the hostile work environment continued until O'Brien resigned on April 29, 2005, and thereafter.[2]

In his complaint, Graham seeks to hold O'Brien and Wilson liable under 42 U.S.C. § 1983, because Graham contends that they violated his right to equal protection of the laws.  In reviewing the Complaint, the Court has had difficulty determining which theories of discrimination Graham is relying on to bring claims against Wilson and O'Brien.  For example, his complaint states:

---

[2]  Although Graham claims that the hostile work environment continued after O'Brien resigned, the Complaint does not include any facts that support this assertion.

4

> **Section 1983 Claim**
>
> Plaintiff's constitutional right to equal protection of the laws includes a right not to be discriminated against because of his race by any state actor in public employment or in the handling of public employment matters.
>
> Defendant, Robert O'Brien, while acting under color of state law in his position as the employment Supervisor of the Division has deprived plaintiff of his equal protection right to be free from discrimination because of his African-American race by encouraging, participating in, and acquiescing in the repeated harassment and hostile work environment plaintiff endured because of his race and disparate treatment in the failure to remedy plaintiff's September 16, 2003 EEO complaint and altered employment evaluations alleged in ¶ 20 & 21 and the failure to give plaintiff notice and opportunity to transfer to other State of Illinois positions including one in Peoria for the Department of Children & Family Services.
>
> Defendant, Janet Wilson, while acting under color of state law in her position as EEO office [sic] of the Division has deprived plaintiff of his equal protection right to be free from discrimination because of his African-American race by intentionally refusing to process plaintiff's September 16, 2003 complaint to the required conclusion and refusing to remedy the disparate treatment and hostile work environment plaintiff was enduring.

(Plaintiff's Complaint, at 8–9.)

After reviewing the entire complaint and Graham's response to the motion to dismiss, it appears that Graham is claiming that O'Brien and Wilson (1) discriminated against him by subjecting him to a hostile work environment because he is African American; and (2) retaliated against him for filing the September 16, 2003 internal EEO claim. (*See* Graham's Response to Motion to Dismiss, at 4.) Graham also brings a Title VII retaliation claim against the Division of Rehabilitative Services of the State of Illinois alleging that the Division, acting through its agents, retaliated against him in violation of Title VII.

As a result of Defendants' actions, Graham claims that he has suffered severe mental distress, lost salary increases that he would have otherwise received but for the Defendants' wrongful conduct, and was denied the opportunity to transfer to the Department of Children and

Family Services in Peoria, Illinois. Graham seeks an injunction from the Court directing the Division to transfer Graham to the Department of Children and Family Services in Peoria at Graham's present salary and benefits when a position becomes available.

Defendants filed a Motion to Dismiss claiming (1) Graham's § 1983 claims referring to incidents before November 15, 2003 are time-barred; (2) Graham's complaint fails to state a cause of action against Janet Wilson; (3) Janet Wilson is entitled to quasi-judicial immunity; (4) Janet Wilson is entitled to qualified immunity; (5) Graham's retaliation claim fails to state a claim upon which relief can be granted; (6) Graham improperly seeks to bring his retaliation claim on incidents that were not included in his EEO complaint; and (7) Graham's request for an injunction requiring the Division to transfer him to the Department of Children Services is improper. Graham responded to Defendants' Motion to Dismiss and this Order follows.

## STANDARD OF REVIEW

In resolving a motion to dismiss, this Court must consider all well-pled facts as true and must draw all inferences in favor of the non-moving party. *Bontkowski v. First Nat'l Bank of Cicero,* 998 F.2d 459, 461 (7th Cir. 1993). In ruling on a motion to dismiss, Courts consider whether relief is possible under any set of facts that could be established consistent with the allegations in the complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957). This Court will dismiss a claim only if it is beyond doubt that no set of facts would entitle the Plaintiff to relief. *Chaney v. Suburban Bus. Div*., 52 F.3d 623, 627 (7th Cir. 1995); *Venture Associates. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 432 (7th Cir. 1993).

## DISCUSSION

**A.    Statute of Limitations**

Defendants' first argument is that many of Graham's claims are time barred.  The statute of limitations for a plaintiff bringing a § 1983 claim in federal court in Illinois is two years. *Kalimara v. Illinois Dept. of Corrections*, 879 F.2d 276, 277 (7th Cir. 1989).  Graham's complaint was filed on November 15, 2005 and therefore Defendants argue that any claims based on § 1983, related to incidents which occurred prior to November 15, 2003, are time barred.  In response, Graham argues that his claims are not time barred because he is making claims of discrimination and retaliation based on a hostile work environment and therefore his claims fall within the continuing violation doctrine.  The Supreme Court has held that hostile work environment claims do not involve a single act of discrimination but rather a series of acts occurring over a period of time that alters the terms and conditions of employment.  *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 117–18 (2002).  Under the continuing violation doctrine, acts contributing to a hostile work environment may be considered even though they would normally fall outside of the statute of limitations period so long as one of the contributing acts occurred within the limitations period.  *Hildebrandt v. Illinois Dept. of Natural Resources,* 347 F.3d 1014, 1036, n. 18 (finding that the *National Railroad Passenger Corporation* rule, which was based on a Title VII claim, applied equally to claims brought pursuant to § 1983).

Graham alleges that Wilson and O'Brien violated his right to equal protection when they (1) subjected him to a hostile work environment because of his race; and (2) retaliated against him for filing the internal EEO charge.  Graham's claim of discrimination is not barred by the statute of limitations because Graham has alleged that Defendants discriminated against him by

7

creating a hostile work environment from September of 2003, to the present. With respect to Graham's § 1983 retaliation claim, the claim is not barred by the statute of limitations because at least some of the alleged retaliatory actions occurred within two years of November 15, 2003. Specifically, Graham alleges that O'Brien submitted poor evaluations regarding his performance as late as May 11, 2004, and that Wilson failed to adhere to Division rules when she sent Graham an e-mail on February 9, 2004, indicating that his complaint had been resolved. Accordingly, Defendants' motion to dismiss Graham's § 1983 claims based on the statute of limitations is denied.

**B.     Graham's § 1983 Claims against Janet Wilson**

    **1.     Wilson's Personal Involvement**

Defendants' second argument is that the claims against Wilson should be dismissed because she did not violate his federal rights. "For a defendant to be liable under § 1983, he or she must have participated directly in the constitutional violation." *Hildebrant*, 347 F.3d at 1039. Defendants argue that the Complaint only seeks to recover from Wilson pursuant to § 1983 because Graham disagrees with her conclusions regarding how she handled his EEO complaint. Wilson, in her position as EEO officer, decided that Graham's complaint should be resolved by the removal of two letters informing Graham that he was not permitted to wear tinted glasses at work from his personnel file. Defendants claim that even though Graham may be unhappy with this decision, the decision did not violate any of his constitutional rights. In response, Graham argues that Defendants overlooked Graham's other claims against Wilson, namely that she deprived him of his right to be free from racial discrimination by intentionally refusing to process Graham's internal EEO claim to the proper conclusion and that she failed to remedy the hostile work environment.

The Court agrees with Graham and finds that he has satisfied the very liberal pleading standards of the Federal Rules. Although the Court has serious concerns regarding whether Graham can prove that Wilson intentionally discriminated against him based on his race or retaliated against him, making all inferences in his favor, Graham has alleged that Wilson was personally involved in creating or possible condoning what Graham believes was a hostile work environment.

### 2.    Judicial Immunity

Defendants argue that Graham's claims against Wilson should be dismissed because Wilson is immune from suit. Defendants claim that Wilson was acting in a quasi-judicial capacity when she made the decision to remove the two letters from Graham's personnel file and close his complaint. Graham argues that Wilson is not entitled to quasi-judicial immunity because there is no indication in the record that Wilson had adjudicatory powers.

In certain situations, absolute immunity has been extended to quasi-judicial conduct by non-judicial officers whose official duties have an integral relationship with the judicial process. *Snyder v. Nolen*, 380 F.3d 279, 286 (7th Cir. 2004). This immunity has been extended where a non-judicial officer is acting in a judicial capacity or where actions are undertaken pursuant to the explicit authorization of a judicial officer. *Id* at 286–87. Defendants argue that Wilson, in her role as an EEO officer acted in a judicial capacity when she made the decision regarding how Graham's complaint should be handled. Although this may be true, the very limited information available at this stage of the litigation regarding the scope of her duties prevents the Court from making this determination at this time. Accordingly, based on the limited record before the Court, Wilson is not entitled to absolute immunity at this time.

### 3. Qualified Immunity

Defendants also argue that Wilson is entitled to qualified immunity because her decision regarding how to handle Graham's internal EEO complaint did not violate any of his federal rights and that even if it did, that right was not clearly established at the time that the decision was made. Specifically, Defendant argues that it is not clearly established that an EEO officer who decides that a complaint should be resolved by removing two letters from the complaining party's file violates the federal rights of the complaining party. In response, Graham argues that Wilson is not entitled to qualified immunity because it is clearly established that employers who discriminate against an employee based on their race have violated the employee's constitutional rights.

Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Assuming as we must on a motion to dismiss that Graham is able to prove that Wilson intentionally discriminated against him based on his race or intentionally retaliated against him by contributing to the creation of a hostile work environment, the question becomes whether the law was clearly established at the time of the incidents, and more specifically, how narrow to base that inquiry. The Court is unable to make this determination on the limited factual record before the Court and therefore denies Wilson's request for qualified immunity subject to reconsideration on a more fully developed factual record.

C.	**Title VII – Retaliation**

Defendants' next argument is that Graham's retaliation claim against the Division should be dismissed because Graham failed to allege that he was subjected to an adverse employment action in retaliation for filing the internal EEO complaint. To establish a claim of retaliation under Title VII, a plaintiff must show that (1) he engaged in a statutorily protected expression; (2) he suffered a materially adverse action by his employer; and (3) there is a causal link between the protected activity and the adverse action. *Dey v. Colt Constr. and Develop. Co.*, 28 F.3d 1446, 1457 (7th Cir. 1994). Here, it is undisputed that Graham engaged in protected speech when he filed an internal EEO charge complaining of racial discrimination; however, Defendants argue that Graham has not alleged facts to show the other two elements.

Defendants argue that Graham has failed to state a claim of retaliation on his claim that the Division retaliated against him "by the repeated harassment and hostile work environment plaintiff endured because of his race." Defendants argue that by stating that Graham endured this alleged treatment "because of his race," Graham has demonstrated that there is no causal connection between the protected speech and the alleged adverse action. In response, Plaintiff argues that Defendants are incorrect because Rule 8 of the Federal Rules of Civil Procedure permits plaintiffs to plead alternative claims in their complaint.

To Defendants credit, the Complaint is poorly drafted with respect to exactly what claims Graham is attempting to plead under the rubric of Title VII. Specifically, the only section of the Complaint that alleges a violation of Title VII has a heading in bold type that says: **Title VII Retaliation Claim**. Despite Graham's argument that he is making alternative claims, the Complaint does not contain another section identifying a Title VII Discrimination Claim. Although the wording of the "Title VII Retaliation Claim" may have been intended to put

Defendants on notice that Graham was also bringing a discrimination claim, the wording itself is less than clear. The Complaint states:

> **Title VII Retaliation Claim**
>
> Defendant, Division of Rehabilitation Services of the Department of Human Services of the State of Illinois acting through its agents responsible for supervision of plaintiff's state employment retaliated against plaintiff for his September 16, 2003 EEO internal complaint contrary to 42 U.S.C. § 2000e-3 (a) by the repeated harassment and hostile work environment plaintiff endured because of his race and disparate treatment in the failure to remedy plaintiff's September 16, 2003 EEO complaint and altered employment evaluations alleged in ¶ 20 & 21and in the failure to give plaintiff notice and opportunity to transfer to other State of Illinois positions including one available in Peoria for the Department of Children & Family Services.

(Pl.'s Complaint, at 9–10.)  From this statement, it is not at all clear what Graham is claiming. The only claim that appears to be properly stated is Graham's claim that the Division retaliated against him for filing the internal EEO complaint by subjecting him to a hostile work environment. However, even this claim is somewhat confusing because of Graham's assertion that he endured this hostile work environment "because of his race."  Additionally, none of Graham's alleged "discrimination" claims are clear.  Accordingly, the Court grants Defendants' Motion to Dismiss with respect to Graham's retaliation claims and allows Graham fourteen days to file an amended complaint that clearly articulates each and every Title VII claim that he is making against the Division.

Based on this Court's finding that Graham's Title VII claims are not clearly presented, the Court declines to rule on Defendants' remaining arguments regarding whether Graham has sufficiently shown that he suffered an adverse employment action or whether his claims are properly set forth in his EEOC charge.  Once Graham has filed his amended complaint, Defendants will have fourteen days to file a second motion to dismiss.  The Court finds that this

is the best method to ensure that Defendants have an opportunity to address each of the claims in Graham's amended complaint.  Additionally, although the Court seriously doubts that injunctive relief such as that requested in Graham's Complaint is appropriate, the Court will delay ruling on that issue until Graham's Title VII claims have been properly alleged and Defendants have had an opportunity to address Graham's amended allegations.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss [#7] is GRANTED IN PART AND DENIED IN PART.  Plaintiff is given fourteen days to file an amended complaint that clearly states the nature and basis for each of the claims that he is bringing pursuant to Title VII.  Defendants have fourteen days from the filing of Plaintiff's amended complaint to respond.

ENTERED this 5th day of May, 2006.

                                                      s/ Michael M. Mihm
                                                     Michael M. Mihm
                                                     United States District Judge